# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CORONADO COAL II, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-0039-AML |
| | ) | |
| BLACKHAWK LAND | ) | |
| AND RESOURCES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 4, 2022
Decided: January 12, 2023

## MEMORANDUM OPINION

Upon Defendant's Motion to Dismiss: **GRANTED**.

John Sensing, Esquire and Carson Bartlett, Esquire, of POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware; M. Shane Harvey, Esquire of JACKSON KELLY PLLC, Charleston, West Virginia, *Attorneys for Defendant Blackhawk Land and Resources, LLC*.

Geoffrey Grivner, Esquire of BUCHANAN INGERSOLL & ROONEY PC, Wilmington, Delaware; Gretchen Jankowski, Esquire, and Jordan Webster, Esquire of BUCHANAN INGERSOLL & ROONEY PC, Pittsburg, Pennsylvania, *Attorneys for Plaintiff Coronado Coal II, LLC*.

**LeGrow, J.[1]**

---

[1] Sitting as a Vice Chancellor by designation under Del. Const. art. IV, § 13(2).

The parties to this action entered into a lease allowing the plaintiff to mine a certain seam of coal below the defendant's mining operations. The plaintiff contends the lease gives it the right to mine the greatest possible amount of coal from the leased seam, and the defendant interfered with that right by refusing to approve the plaintiff's mining plans. The plaintiff first sought to litigate that dispute in the Superior Court, but that court dismissed the action in favor of arbitration as required by the arbitration clause in the parties' lease.

While the Superior Court case was pending, the defendant initiated arbitration, appointed an arbitrator, and invited the plaintiff to appoint a second arbitrator as permitted by the lease's arbitration provision. The plaintiff refused, arguing the Superior Court claims were not arbitrable. The defendant then appointed a second arbitrator—a result expressly contemplated in the arbitration clause. After the Superior Court dismissed the action there in favor of arbitration, the plaintiff filed its current claims in this court, seeking (i) a declaratory judgment that the defendant's appointment of the second arbitrator was invalid, and (ii) an injunction requiring the defendant to withdraw that appointment and allow the plaintiff to appoint its own arbitrator. The pending motion to dismiss requires this Court to determine whether it has subject matter jurisdiction to intervene and resolve the parties' dispute regarding the arbitrators' selection. Because the Court does not have

subject matter jurisdiction over this procedural question, the complaint must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the complaint and the documents it incorporates by reference. This dispute arises out of a lease between Plaintiff Coronado Coal II, LLC ("Coronado") and Defendant Blackhawk Land and Resources, LLC ("Blackhawk"). Coronado is a subsidiary of Coronado Global Resources Inc., a company that produces metallurgical coal.[2] Blackhawk leases and mines numerous coal tracts in West Virginia.[3] In 2015, Blackhawk subleased to Coronado a tract known as the Powellton Seam (the "Sub-Sublease").[4]

### A. The Sub-Sublease Dispute

The Sub-Sublease was made "subject to and in accordance with the terms and conditions" of an original lease dated July 1, 1937 (the "1937 Lease") and expressly provided that any conflicts between the 1937 Lease and the Sub-Sublease would be controlled by the language of the 1937 Lease.[5] Article Twenty of the 1937 Lease (the "Arbitration Clause") required arbitration of questions arising under Articles Six through Ten of the 1937 Lease.

---

[2] Pl.'s Verified Am. Compl. (hereinafter, "Compl.") ¶ 3.
[3] Def.'s Opening Br. in Supp. of Mot. to Dismiss Verified Am. Compl. (hereinafter "Def.'s Opening Br.") at 2.
[4] *Id*. at 2.
[5] *Id*., Ex. B, § 1.

The Sub-Sublease gave Coronado the right to mine a coal seam below Blackhawk's mining operations. For that reason, the Sub-Sublease required Coronado to regularly submit mining plans to Blackhawk for approval. In 2019, a conflict arose regarding Blackhawk's rejection of Coronado's "retreat mining" plans. Retreat mining is a process by which pillars of coal left in place to support the mine roof during advance mining are "pulled" (*i.e.*, mined) as the operator concludes mining in an area and "retreats" back toward the mine portal. Blackhawk objected that Coronado's planned retreat mining in the Powellton Seam was problematic for the continued development and safety of Blackhawk's own mining operations above Coronado's operations.[6]

## B. Litigation in Superior Court

In response to Blackhawk's rejection of Coronado's mining plans, Coronado filed a complaint in the Delaware Superior Court in October 2021, alleging that Blackhawk's rejection of Coronado's retreat mining plan violated Article Six of the 1937 Lease. On November 30, 2021, Blackhawk initiated an arbitration to resolve the parties' dispute. The Arbitration Clause in the 1937 Lease requires arbitration to be conducted in front of two "disinterested" arbitrators, one selected by each party.

---

[6] Compl., Ex. 1.

If one party fails to select an arbitrator within ten days, however, the other party may name the second arbitrator.  Specifically, the 1937 Lease states:

> Questions in dispute to be determined by arbitration shall be submitted to two disinterested arbitrators, one of whom shall be appointed by each of the parties hereto respectively . . . and in case either party hereto neglects to nominate an arbitrator for the space of ten days after receiving notice from the other party to nominate any arbitrator then the other party shall nominate two and the two thus appointed shall appoint a third, all of them to be disinterested.[7]

Blackhawk's November 30th letter appointed Bruce Cryder as the first disinterested arbitrator under the provisions of the 1937 Lease as incorporated into the Sub-Sublease. [8]  Blackhawk further requested that Coronado "likewise nominate a disinterested arbitrator pursuant to [the Arbitration Clause]."[9]  Coronado responded to Blackhawk on December 10, 2021, noting its position that the parties' dispute was not arbitrable and therefore refusing to appoint a second arbitrator.[10]

On December 13, 2021, Blackhawk moved to dismiss the Superior Court complaint for lack of subject matter jurisdiction, contending the Arbitration Clause divested that court of jurisdiction to hear Coronado's claims.[11]  Coronado opposed dismissal, arguing the Arbitration Clause only governs disputes arising out of Coronado's performance under the lease, and therefore did not apply to the Superior

---

[7] Def.'s Opening Br., Ex. C, Article 20.
[8] Compl., Ex. 1.
[9] *Id.*
[10] *Id.*, Ex. 2.
[11] Def.'s Opening Br. at 5-6.

4

Court case, which Coronado characterized as one arising out of Blackhawk's conduct.

On December 30, 2021, after Coronado still had not nominated an arbitrator, Blackhawk notified Coronado of its selection of a second arbitrator.[12] On May 31, 2022, the Superior Court dismissed the action there, explaining that "Blackhawk's motion to dismiss both counts is granted because the 1937 Lease's Arbitration Clause governs the present dispute and divests this Court of jurisdiction over Coronado's claims."[13]

## C. Proceedings in this Court

Following the Superior Court's decision, Coronado asked Blackhawk to withdraw the second arbitrator's appointment, which Blackhawk refused to do.[14] Coronado then filed this action seeking (1) a declaration that Blackhawk's appointment of the second arbitrator was invalid; and (2) a permanent injunction (i) prohibiting Blackhawk from arbitrating before the current panel, (ii) requiring Blackhawk to withdraw its appointment of the second arbitrator, and (iii) allowing Coronado to appoint its own arbitrator.[15] In response, Blackhawk moved to dismiss Coronado's verified amended complaint.

---

[12] *Id*. at 5.

[13] *Coronado Coal II v. Blackhawk Land and Resources LLC*, 2022 WL 1772246, at *5 (Del. Super. May 31, 2022).

[14] Def.'s Opening Br. at 6.

[15] Compl. at 8.

5

In its motion, Blackhawk argues this Court lacks subject matter jurisdiction over Coronado's claims because Coronado seeks judicial intervention into an issue reserved for arbitration.[16] Blackhawk asserts the parties' differing interpretations of Arbitration Clause's process for arbitrator selection is an issue of procedural arbitrability to be decided by the arbitrator and not the Court.[17]

Coronado responds that Blackhawk's motion miscasts Coronado's amended complaint as asking this Court to rule on issues of procedural arbitrability, when what Coronado seeks is to enforce its fundamental right to a fair, impartial arbitration panel.[18] Specifically, Coronado argues an arbitration panel comprised entirely of arbitrators selected by Blackhawk is fundamentally unfair to Coronado.[19] Coronado contends this fundamental unfairness is exacerbated by the 1937's Lease's failure to list any criteria for assessing arbitrator qualifications or determining whether an arbitrator is "disinterested."[20] For those reasons, Coronado argues its request for a declaration disqualifying Blackhawk's second appointed arbitrator is not premature, and interests of economy, efficiency, and practicality require the Court's intervention at this stage of the proceedings.[21]

---

[16] *Id.* ¶ 18.
[17] Def.'s Opening Br. at 8.
[18] Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss (hereinafter "Pl.'s Br. in Opp.") at 4.
[19] *Id.* at 5.
[20] *Id.* at 9.
[21] *Id.* at 10.

## ANALYSIS

Blackhawk's motion seeks dismissal under Court of Chancery Rules 12(b)(1) and 12(b)(6). In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must assess "the nature of the wrong alleged and the remedy sought to determine whether a legal, as opposed to an equitable, remedy is available and adequate."[22] If the claim at issue is arbitrable, this Court lacks subject matter jurisdiction because arbitration provides an adequate legal remedy.[23] Whether parties agreed to arbitrate is an issue of "substantive arbitrability" to be resolved by a court. Issues of "procedural arbitrability," on the other hand, are within the arbitrator's exclusive jurisdiction.[24]

In considering a motion to dismiss under Rule 12(b)(6), a court only will grant the motion when "it appears with reasonable certainty that the plaintiff cannot prevail on any set of facts that can be inferred from the pleadings."[25] Although the Court accords a plaintiff all reasonable inferences that may be drawn from the complaint, the Court "is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[18] Consequently, mere conclusory allegations that are not supported by facts will not be accepted as true.[19]

---

[22] Del. Ch. Ct. R. 12; *Lefkowitz v. HWF Hldgs., LLC,* 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009).

[23] *Lefkowitz,* 2009 WL 3806299, at *3.

[24] *CLP Toxicology, Inc. v. Casla Bio Hldgs., LLC*, 2021 WL 2588905, at *9 (Del. Ch. Jun. 14, 2021).

[25] *Lefkowitz,* 2009 WL 3806299, at *4.

**I. This Court does not have subject matter jurisdiction to resolve the parties' dispute concerning the selection of arbitrators.**

Delaware courts lack subject matter jurisdiction to resolve disputes that litigants contractually agree to arbitrate.[26] "Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions that grow out of the dispute and bear on its final disposition should be left to the arbitrator."[27]

Delaware courts consistently hold that these procedural arbitrability issues include whether the parties have complied with the terms of an arbitration provision.[28] Whether an arbitrator appointed under the terms of an arbitration agreement is biased, partial, or qualified is just such a question.[29] It is settled that objections to an arbitrator's qualifications may be raised to a reviewing court as a basis to vacate an arbitration award at the conclusion of the arbitration.[30] Coronado, however, argues courts will intervene and enjoin an arbitration when questions of

---

[26] *NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007).
[27] *Viacom Int'l Inc. v. Winshall,* 72 A.3d 78, 82 (Del. 2013) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)); *See also TMIP Participants LLC v. DSW Grp. Holdings LLC,* 2016 WL 490257, at *8 (Del. Ch. Feb. 4, 2016).
[28] *Lefkowitz,* 2009 WL 3806299, at *8; See also *Winshall*, 72 A.3d at 78; *In re Good Tech. Corp. S'holder Litig.* 2017 WL 4857341 (Del. Ch. Oct. 27, 2017).
[29] *See In re Good Tech. Corp. S'holder Litig.*, 2017 WL 4857341, at *3 (whether arbitrator that recused himself may select a successor arbitrator is a question of procedural arbitrability); *Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 1987 WL 17445, at *1-2 (Del. Ch. Sept. 21, 1987) (refusing to resolve petitioner's objection to arbitrator's appointment until the arbitration concluded).
[30] See *Weiner v. Milliken Design, Inc.*, 2015 WL 401705, at *13 (Del. Ch. Jan. 30, 2015); *Anadarko Petroleum Corp.,* 1987 WL 17445, at *1-2.

8

procedural arbitrability implicate the "fundamental fairness" of the arbitration proceedings.[31] For the reasons set forth below, however, even if Coronado is correct that there are circumstances in which a court will intervene to address procedural issues that imperil an arbitration's fundamental fairness, this is not such a case.

## II. Coronado's contention that Blackhawk's selection of a second arbitrator makes the arbitration "fundamentally unfair" does not give this Court the authority to enjoin the arbitration.

The Delaware cases on which Coronado relies for its "fundamental fairness" argument arose from unusual fact patterns distinct from the facts in this case. In the first such case, *Speidel v. St. Francis Hosp. Inc.*,[32] a former employee sued her employer for breach of contract and negligence.[33] The issue before the Court was whether the Court could compel compliance with an arbitration settlement agreement that named a specific arbitrator when that arbitrator disclosed during the arbitration that he had a past adversarial relationship with a witness important to the defendant's case.[34] Both parties already had selected the arbitrator and the arbitration was underway when the potential conflict of interest between the arbitrator and a witness was discovered.[35] But the parties "did not agree to a process whereby a new arbitrator would be selected if the agreed-upon arbitrator became ill or was otherwise

---

[31] Pl.'s Br. in Opp. at 4, 11.
[32] *Speidel v. St. Francis Hosp. Inc.*, 2002 WL 1477828, at *1 (Del. Super. Jul. 11, 2002).
[33] *Id.*
[34] *Id.*
[35] *Id.* at *5.

9

unavailable."[36] The Court strongly urged the parties to agree upon a new arbitrator to conduct an arbitration consistent with the parties' agreement.[37]

Similarly, in *Lynn v. Ullrich*,[38] the other Delaware case on which Coronado relies, Ms. Ullrich and her passenger, Ms. Brown, were injured when Ms. Ullrich's vehicle collided with Ms. Lynn's vehicle. Ms. Ullrich and Ms. Lynn agreed to submit their dispute to binding arbitration under Superior Court Civil Rule 16.[39] Ms. Brown filed claims against both drivers and agreed to participate in a separate binding arbitration in front of the same arbitrator selected by Ms. Lynn and Ms. Ullrich.[40] Ms. Brown's matter was arbitrated first, and when the arbitrator ruled Ms. Lynn was not liable for the accident, Ms. Ullrich refused to arbitrate before that arbitrator, even though he specifically was named in the parties' arbitration agreement.[41] The named arbitrator then took the position he would not arbitrate the case unless court-ordered to do so because he believed he could not fairly and impartially judge the matter.[42] Citing the "unusual facts" of the case and finding itself bound by the arbitrator's conclusion that he could not objectively judge the

---

[36] *Id.*
[37] *Id.* at *6 (Del. Super. Jul. 11, 2002).
[38] *Lynn v. Ullrich*, 2013 WL 1934935 (Del. Ch. May 10, 2013).
[39] *Id.* at *1.
[40] *Id.* at *2.
[41] *Id.* at *1.
[42] *Id.*

matter, the Court refused to order the parties to arbitrate before that individual. Instead, the Court ordered the parties to reach an agreement on a new arbitrator.[43]

Coronado concedes these are the only two cases in which a Delaware court intervened to resolve disputes regarding an arbitrator's selection or qualifications before the arbitration was conducted.[44] Both cases involved unusual circumstances in which the parties' agreement named a specific arbitrator who later identified a conflict, and the parties required judicial intervention to clarify how to proceed with arbitration in light of that unexpected turn of events. The *Lynn* Court expressly stated that it would have reached a different conclusion if the named arbitrator had testified he could objectively consider the case. Here, in contrast, there is no agreement naming a specific arbitrator, and none of the selected arbitrators have identified any bias or unwillingness to serve.

Corornado also cites decisions in other jurisdictions in which courts concluded that an arbitration presided over by an arbitrator chosen exclusively by one party would be fundamentally unfair.[45] All these cases involved challenges to

---

[43] *Id*. at *6.

[44] Pl.'s Br. in Opp. at 4, 10.

[45] *See McMullen v. Meijer, Inc.,* 355 F.3d 485, 494 (6th Cir. 2004) (holding that where one party had unilateral control over the pool of potential arbitrators, arbitrator selection "inherently lack[ed] neutrality"); *Jean v. Bucknell Univ.,* 2021 WL 1521724 (M.D. Pa. Apr. 16, 2021) (noting the broad authority arbitrators exercise over arbitration proceedings, then finding that "[i]t is thus fairly obvious why allowing one party to select the arbitrator in a given matter becomes problematic"); *Roberts v. Time Plus Payroll Servs., Inc.,* 2008 WL 376288, at *3 (E.D. Pa. Feb. 7, 2008) (noting that where only one side has a voice in choosing an arbitrator, it "raises an appearance of

---

the fundamental fairness of a contractual provision that allowed one side to unilaterally control the selection of the arbitrator. Those courts ruled that the selection provision itself was fundamentally unfair. This case is different. The Arbitration Clause gives each side the right to select an arbitrator and only allows one side to select both arbitrators if the other side declines to make the appointment within the contractual timeframe. These types of contractual provisions routinely are upheld as enforceable and fair.[46]

The facts of *Universal Reinsurance Corp. v. Allstate Ins. Co.* are similar to this case. There, Allstate Insurance and Universal Reinsurance entered into an agreement with an arbitration clause that gave each side the right to select one arbitrator. The agreement further provided that if one party refused or neglected to appoint an arbitrator within thirty days, the other party could appoint the second arbitrator.[47] Based on that provision, Allstate appointed a second arbitrator after Universal delayed in appointing its arbitrator.[48] In upholding the arbitration clause's

---

partiality"); *Nishimura v. Gentry Homes, Ltd.,* 338 P.3d 524, 534 (Haw. 2014) (holding that an arbitration-selection process controlled by one party was "fundamentally unfair").

[46] *See, e.g., Wallace v. Mt. Poso Cogeneration Co., LLC*, 2021 WL 829495, at \*1 (Del. Ch. Mar. 3, 2021) (enforcing arbitration provision providing that "[i]n the event that a Party fails to appoint an arbitrator within the thirty (30) day period set forth above, the arbitrator appointed by the other Party shall conduct the arbitration"); *See also Clinton Water Ass'n v. Farmers Const. Co.,* 254 S.E.2d 5 692, 695-97 (W.Va. 1979) (interpreting arbitration provision providing for a selection procedure of arbitrators in the event one party refused to appoint its own neutral arbitrator to stall arbitration).

[47] *Universal Reinsurance Corp. v. Allstate Ins. Co.,* 16 F.3d 125, 127 (7th Cir. 1993).

[48] *Id*. at 126.

12

express terms, the Court explained that since both parties had agreed to the outcome, it was not the Court's province to rewrite their agreement.[49]

The purpose of appointment provisions like the one contained in the Arbitration Clause is to prevent one party from unilaterally stalling arbitration by refusing to appoint an arbitrator. These clauses are not indicative of any fundamental unfairness in the agreement. It is Delaware's policy to enforce arbitration agreements and respect the parties' negotiated language, as with any other contract. If the Court entertained injunction proceedings every time one side contended the selection of an arbitrator was fundamentally unfair, it would fatally undermine the purpose of arbitration and involve the courts in disputes that the parties contractually agreed to submit to arbitration.

Finally, at oral argument, Coronado argued Blackhawk did not have the contractual right to appoint a second arbitrator because Coronado objected to the arbitration demand and reserved its rights. Again, however, whether or not Blackhawk contractually was entitled to appoint a second arbitrator, or whether the arbitrators appointed qualify as "disinterested" under the 1937 Lease, are questions of procedural arbitrability for the arbitrators to resolve in the first instance.

---

[49] *Id*. at 129-130.

13

## CONCLUSION

For the foregoing reasons, Blackhawk's Motion to Dismiss under Court of Chancery Rule 12(b)(1) is **GRANTED**. Blackhawk's alternative argument under Rule 12(b)(6) is **MOOT**. **IT IS SO ORDERED**.